IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
GEORGIA ATLANTA DIVISION

DARNELL BROWN,

     Plaintiff,

v.

DEKALB COUNTY, GEORGIA, et al.,

     Defendants.

Civil Action File No.
1:17-CV-01780-WMR

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Plaintiff Darnell Brown (hereinafter "Plaintiff"), by and through undersigned counsel, and hereby files this, his Memorandum in Opposition to Defendants' Motion for Summary Judgment. In support, Plaintiff states the following:

## STATEMENT OF FACTS

On June 2, 2015, Defendants were conducting surveillance related to alleged prostitution at the Super 8 Motel and Knights Inn in DeKalb County. [Doc. 1, ¶10; Craig Depo 28:7-14]. Defendants were seeking probable cause to be able to confront the occupant of one of the rooms they were watching to further their investigation. [Craig Decl., Exh. 1]. After getting off work as a private security

officer[1], Plaintiff came to the Super 8 Motel and went to room 115 to visit a friend for approximately fifteen (15) minutes. [Doc. 1 at ¶ 12]. In that time, Defendants ran Plaintiff's tag and had the following dialogue:

(8:50-9:08) Officer Gill: See and I wish I had a county phone right now. I'm trying to get this number but I don't see if she has one though. I was gonna call the, the wife. And see where her car's supposed to be right now. Guarantee he gets out of that place real fast.

(9:43-9:53) Officer Craig: Let me ask you this – do you want to um when the Hummer leaves, did you want to stop the Hummer? See if you can get PC on that? Or try to get PC on the other vehicle?

(9:56-10:00) Officer Gill: I mean, technically I could just stop that car right now cause it's 53 (Suspicious person).

(10:10) Officer Craig: True.

(10:37-10:45) Officer Gill: I'm sure Miss Vicki Brown wouldn't like to hear about her, her man being at the Super 8.

(12:14-12:16) Officer Gill: You said the Hummer's coming out?

(12:17-12:19) Officer Craig: Yeah, he's leaving now.

(12:21-12:29) Officer Gill: Alright uh PC on him would be good. We'll stop him, get him to admit something, and then uh we'll go over and knock on that door. Is that other guy going into 115? [Craig Dec., Exh.1]

Upon leaving the Super 8 Motel, Plaintiff made a right turn onto the highway and utilized his right turn signal. [Doc. 1 at ¶ 13; Brown Depo., 103:4-8].

---

[1] Plaintiff owns EPS, a security company for private properties, patrol shopping centers, parking lots and apartment complexes. Brown Depo., 19:24-20:15. On the day in question, Plaintiff was doing security checks at the apartment complexes he is contracted to work. [Brown Depo., 58:2-25].

Defendant Craig then intentionally made a false statement to Defendant Gill in order to fabricate probable cause advising him that Plaintiff was in violation of O.C.G.A. § 40-6-123 by failing to use a turn signal. [Doc. 1 at ¶ 14; Gill Depo., 34:18-21]. Plaintiff was then improperly stopped and detained by Defendant Gill at the direction of Defendant Craig. [Doc. 1 at ¶ 15; Craig Depo, 52:15-19]. Admittedly, Defendant Gill did not witness Plaintiff not use his turn signal. [Gill Depo., 34:15-17].

Defendant Gill approached Plaintiff's vehicle and began to aggressively interrogate Plaintiff regarding his occupation, whereabouts, personal life (insinuating that he would tell Plaintiff's wife that Plaintiff was in a room allegedly known for prostitution) and his activities at the Super 8 Motel. [Doc. 1 at ¶ 16; Brown Depo., 106:6-108:21]. During Plaintiff's illegal detention, Defendant Gill began looking in the back seat of Plaintiff's vehicle with a flashlight. [Brown Depo., 108:11-12]. Plaintiff rolled down his backseat window to assure Defendant Gill that he was not hiding anything. [Brown Depo., 108: 12-16]. Plaintiff's security uniform shirt was in the backseat with the word "Special Officer GA" written on it and a badge attached that said "Loss Prevention Officer". [Doc. 1 at ¶ 17; Brown Depo., Exh. 8 and 9]. Defendant Gill then began to question Plaintiff regarding his shirt. [Brown Depo., 108:15-16]. Plaintiff explained that he worked in private security and that, in the past, he worked as a Special Detail Deputy

Sheriff with the Fulton County Sheriff's Department.[2] [Brown Depo., 13:10-15; 108:17-21]. Plaintiff never stated that he was P.O.S.T. certified nor that he was currently a certified peace officer. [Doc. 1 at ¶ 19-20; Brown Depo., 108:23-109:1;]. Defendant Gill detained Plaintiff for approximately fifteen (15) minutes and Plaintiff was eventually released without a citation. [Brown Depo., 109:16-21; 117:9-10].

**B. JUNE 3, 2015**

The next day, Defendant Gill contacted the Fulton County Sheriff's Department and falsely stated that Plaintiff held himself out to be a retired P.O.S.T certified peace officer of the Fulton County Sheriff's Department. [Doc. 1 at ¶ 21; Gill Depo., Exh 1] Defendant Gill went as far as to tell Captain Kevin Walker and Sergeant Mills from Internal Affairs that Plaintiff possibly had a Fulton County Sheriff's Department badge. [*Id.*]. When Fulton County Sheriff's Department stated that Plaintiff was not a P.O.S.T certified or retired P.O.S.T. certified peace officer with the Department, Defendant Gill swore out criminal arrest warrants for Impersonating a Police Officer, Obstruction, and Loitering/Prowling. [Doc. 1 at ¶ 22; Gill Depo., Exh. 2]. Within days after securing arrest warrants, DeKalb County Police Department and Gwinnett County Police Department arrived at Plaintiff's

---

[2] Plaintiff was employed by the Fulton County Sheriff's Department from approximately 1988 to 1994 and received his jail certification training and weapons training. [Brown Depo., 33:5-11; 34:11-17; Gill Depo., Exh. 4].

home and conducted a search. Officers informed Plaintiff's wife they had a warrant for impersonating a police officer, prostitution and obstruction. [Brown Depo., 131:11-14]. Officers went through Plaintiff's home, including his attic and closets. [Brown Depo., 132:8-11]. Plaintiff's neighbors witnessed officers searching Plaintiff's home, further embarrassing Plaintiff and his wife. [Brown Depo., 132:3-5]

On June 10, 2015, Plaintiff turned himself into DeKalb County Sheriff's Department [Brown Depo., 138:1-2]. On June 12, 2015, Defendant Gill appeared by video to testify at Plaintiff's bond hearing. [Brown Depo., 143:14-24]. As a result of Defendant Gill's testimony at the bond hearing, Plaintiff's bond was set at $9,000.00 plus fees and he was forced to serve three days in the DeKalb County Jail before being released.[3] [Doc. 1 at ¶ 24; Ross Decl., Exh. 3].

## C. CRIMINAL PROCEEDINGS

Plaintiff was subsequently indicted on October 18, 2015 for Impersonating an Officer, a felony, and Making False Statements. [Doc. 1 at ¶ 25]. Plaintiff expended over $15,000.00 in attorney's fees, bail and other related costs in order to fight the charges against him. [*Id*. at ¶ 26]. On February 17, 2016, Plaintiff filed a Motion to Suppress challenging the unconstitutional stop by Defendants. [Ross

---

[3] Plaintiff was released on June 13, 2015 after posting bond. [Brown Depo., 139:1-5].

Decl., Exh. 1]. Said Motion was granted by the trial court on April 12, 2016 after a hearing where both Defendants testified against Plaintiff. [Doc. 1 at ¶ 28; Exh. B]. As a result, Plaintiff's charges were dismissed on April 19, 2016. [*Id.* at Exh. B; Ross Decl., Exh. 6].

## PROCEDURAL HISTORY

On May 16, 2017, Plaintiff filed his Complaint for Damages against DeKalb County, C.R. Gill, individually and in his official capacity, and D.L Craig, individually and in his official capacity alleging False Arrest, Malicious Prosecution and Intentional Infliction of Emotional Distress. [Doc. 1]. Defendants filed a Motion to Dismiss which this Court granted in part and denied in part, leaving Plaintiff's claims against Defendants in their individual capacities for malicious prosecution under 42 U.S.C. § 1983 and Georgia law and Plaintiff's claim against Defendants in their individual capacities for intentional infliction of emotional distress under Georgia law. [Docs. 7; 17].

## STANDARD OF REVIEW

Summary judgment is authorized only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986) (emphasis added).

Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.*, 477 U.S. at 322-23.

The moving party bears the burden of proving that no genuine issue of material fact exists. In evaluating whether the moving party has satisfied this burden, the Court must consider all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Likewise, all reasonable doubts about the facts are to be resolved in favor of the non-moving party. *Twiss v. Curry*, 25 F.3d 1551, 1555 (11th Cir. 1994). "If reasonable minds could differ on any inferences arising from the undisputed facts, summary judgment should be denied." *Id.* Furthermore, "if a reasonable fact finder can draw more than one inference from the facts, and that inference creates a genuine issue of material fact," summary judgment is likewise improper. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997); *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855 (11th Cir. 1988).

In deciding a motion for summary judgment, the Court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these functions are solely within the province of the finders of fact (i.e., the jury). *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510; *Twiss*, 25 F.3d at

1555. If the record presents factual issues, the Court must not decide them; instead, the Court should deny the motion and proceed to trial. *See Burton v. Tampa Housing Auth.*, 271 F.3d 1274, 1277 (11th Cir. 2001); *O'Neal v. United States*, 258 F.3d 1265, 1270 (11th Cir. 2001). Essentially, "the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

On a summary judgment motion based on qualified immunity, as we have in the instant case, the Court is required to resolve all issues of material fact in favor of the plaintiff. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002), *citing Sheth v. Webster,* 145 F.3d 1231, 1236 (11th Cir.1998). The Court then answers the legal question of whether the defendant[ ][is] entitled to qualified immunity under that version of the facts." *Thornton v. City of Macon,* 132 F.3d 1395, 1397 (11th Cir.1998). The Eleventh Circuit Courts have even gone so far as to state that the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach,* 208 F.3d 919, 925 (11th Cir.2000). Nevertheless, for summary judgment purposes, the Court's analysis must begin with a description of the facts in the light most favorable to the plaintiff. *See Skrtich v. Thornton,* 280 F.3d 1295, 1299 (11th Cir.2002).

## ARGUMENT AND CITATION OF AUTHORITY

I. **Summary Judgment Should be Denied as to Plaintiff's Malicious Prosecution Claims.**

A. **Defendants Are Not Entitled to Qualified Immunity as Defendants' Conduct Violated Plaintiffs' Clearly Established Fourth Amendment Rights.**

The doctrine of qualified immunity shields from civil liability police officers and other government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the alleged misconduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is, as the term implies, qualified. It is not absolute. It contemplates instances in which a public official's actions are not protected. See *Madison v. Gerstein*, 440 F.2d 338, 341 (5th Cir.1971); see also *Butz v. Economou*, 438 U.S. 478, 506-07, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) ("[I]t is not unfair to hold liable the official who knows or should know he is acting outside the law, and that insisting on an awareness of clearly established constitutional limits will not unduly interfere with the exercise of official judgment."). The principles behind qualified immunity would be rendered meaningless if such immunity could be invoked to shelter officers who, because of their own interests, allegedly flout the law, abuse their authority, and deliberately imperil those they are employed to serve and protect.

In the instant case, Defendants are not entitled to qualified immunity because, taken in a light most favorable to party asserting injury, the facts of the present case show that Defendants' conduct violated Plaintiffs' clearly established Fourth Amendment rights. *Zivojinovich v. Barner,* 525 F.3d 1059, 1071 (11th Cir. 2008) (citing *Saucier v. Katz,* 533 U.S. 194 (2001)).

### 1. Plaintiff's Fourth Amendment Rights Were Violated.

Taking the facts in the record in the light most favorable to Plaintiff, no reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause nor arguable probable cause existed, unless based on fabrications, to seek arrest warrants for Plaintiff.

In *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. l993), the Court granted qualified immunity where government agents inspecting a restaurant made an improper arrest for a building code violation. *Id*. at 1558. The agents in *Post* claimed that they counted people in excess of the restaurant's maximum capacity, but in effect they erroneously counted employees who were not to be counted. The Court held that a "mistaken but reasonable count" was sufficient for the agents to establish arguable probable cause. *ld*. However, the agents in *Post* simply made a good faith mistake, whereas here, Defendants' conduct creates factual issues as to their honesty and credibility. It is readily apparent that the conduct in *Post* is

characteristic of the type of conduct that the policies of qualified immunity seek to protect. In *Post*, the officials made a reasonable mistake in the legitimate performance of their duties, and there were no concerns regarding potential abuse of authority or motivation to make an arrest. *Id*. In contrast, Plaintiff contends that Defendants made several deliberately false statements to support his arrest, in violation of the law. Defendants essentially want this Court to sanction their fabrications and misrepresentations and shield their egregious behavior with qualified immunity and summary judgment in their favor.

The instant case is directly analogous to the facts in *Kelly v. Curtis*, 21 F.3d 1544 (11th Cir. 1994). In *Kelly*, the officer obtained an arrest warrant based on her sworn statement that the Defendant, Kelly, had committed the offense of cocaine possession. When the officer swore out the affidavit, the facts (for summary judgment purposes)[4] were that the officer knew that the substance Kelly had possessed was not cocaine. In Kelly's Response to the officer's Motion for Summary Judgment alleging that the officer's conduct was shielded by qualified immunity, Kelly contended that the officer violated a clearly established duty not to seek a warrant on the basis of perjured testimony. *Id*. The Court denied

---

[4] On a summary judgment motion based on qualified immunity the Court is required to resolve all issues of material fact in favor of the plaintiff. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002), *citing Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir.1998).

summary judgment on the basis of qualified immunity citing *Franks v. Delaware,* 438 U.S. 154, 165–66, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978).

Under *Franks,* a police officer violates the Constitution if, in order to obtain a warrant, she perjures herself or testifies in reckless disregard of the truth. As the *Franks* Court explained,

> "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." ... This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay ... as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Franks v. Delaware,* 438 U.S. 154, 165–66, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978) (quoting *United States v. Halsey,* 257 F.Supp. 1002, 1005 (S.D.N.Y.1966)).

Here, Plaintiff alleges that he never stated to Defendant Gill that he was a P.O.S.T. certified peace officer nor did he show a badge in order to impersonate a police officer. [Brown Depo., 108:23-109:1, 119:6-8, 22-24; Craig Decl, Exh. 1]. Therefore, for Summary Judgment purposes, the facts known to Defendant Gill when he swore out the arrest warrants for Plaintiff were that Plaintiff did not say he

was a P.O.S.T. certified peace officer and did not show a badge to indicate the same. As such, the arrest warrants secured by Gill were based on fabrication and perjured testimony.

Furthermore, in *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir 2004), the Eleventh Circuit stated that the trial court on summary judgment must, at the outset, recognize and give credence to allegations in a Plaintiff's complaint where fabrication is asserted in support an arrest. Once that assertion is recognized, the trial court should look at what was and was not said and/or done by the police that would or could show circumstantially that fabrication and/or misrepresentation was done to support that arrest; and further, summary judgment cannot be granted to a Defendant police officer by his statements that merely counter Plaintiff's word. *Kingsland*, at 1226.

As one can see by the radio traffic between Defendants in this case, Defendant Gill **admits** that Plaintiff did not show him a badge but that he "saw it.

(18:53-18:55) **Officer Craig:** Did he show you his badge?

(18:56-19:05) **Officer Gill:** Uh **he didn't show it but I saw it**. I was like, "you work for PD?" "Yeah, I'm retired." It was like, "Oh yeah?" [Craig Decl., Exh. 1] (emphasis added).

However, Defendant Gill testified in his deposition that Plaintiff **flashed the badge** while getting his license. Additionally, in the arrest warrants sworn by Defendant Gill, he states under oath that Plaintiff "flash[ed]" his badge in order to intentionally deceive him into thinking he was a P.O.S.T. certified police officer. Gill Dep., at 43:25-44:8 45:13-46:1, Ex. 2.

The radio traffic between Defendants actually confirms Plaintiff's testimony that the badge was attached to his jacket on the floor of his vehicle which is how Defendant Gill just "saw it" and that Plaintiff did not show it to him. [Brown Dep., at 121:11-122:15]. Plaintiff's contention is that he never told Defendant Gill he was a P.O.S.T certified police officer and never showed him a badge. Because the dialogue between Defendant Gill and Plaintiff was not recorded there is no evidence to contradict Plaintiff's version of events except for Gill's testimony. [Gill Depo., 52:21-24]. In deciding a motion for summary judgment, the Court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts (i.e., the jury). *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510; *Twiss*, 25 F.3d at 1555. Thus, Summary Judgment should be denied.

### 2. Fabrication of Evidence to Support an Arrest is a Violation of Clearly Established Law.

The second prong of the qualified immunity analysis is to determine whether Defendants' conduct violated clearly established statutory or constitutional rights

of which a reasonable person would have known at the time of the alleged misconduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Lying, fabricating evidence, planting evidence, intentional misrepresentations in an effort to arrest and/or obtain a conviction does violate clearly established law, because it is so obviously wrong to do such a thing. *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1281 (11th Cir. 2002); citing *Riley v. City of Montgomery,* 104 F.3d 1247, 1253 (11th Cir. 1997)[5].

Furthermore, in the Eleventh Circuit, there is no doubt that malicious prosecution violates one's Fourth Amendment rights. *Uboh v. Reno* 141 F. 3d 1000, 1002-1003 (11th Cir. 1998).

## B. Officer Craig Instituted and Continued Plaintiff's Criminal Prosecution.

To establish a malicious prosecution claim under § 1983, a plaintiff must prove a violation of his Fourth Amendment rights in addition to the elements of the common-law tort of malicious prosecution: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause;

---

[5] See also, *Kingsland*, 382 F.3d at 1232, falsifying facts to establish probable cause is patently unconstitutional. *See, e.g., Riley v. City of Montgomery,* 104 F.3d 1247, 1253 (11th Cir.1997) ("It was well established in 1989 that fabricating incriminating evidence violated constitutional rights."); *see also Hinchman v. Moore,* 312 F.3d 198, 205–06 (6th Cir.2002) (citing *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir.1989))

(3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* (citing *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998)).

Defendant Craig contends that he did not institute or continue Plaintiff's prosecution.[6] However, Defendants own words provide evidence to the contrary.

(18:53-18:55) **Officer Craig:** Did he show you his badge?

(18:56-19:05) **Officer Gill:** Uh **he didn't show it** but I saw it. I was like, "you work for PD?" "Yeah, I'm retired." It was like, "Oh yeah?" [Craig Decl., Exh. 1] (emphasis added).

Because of Defendant Gill's own admission, Defendant Craig **knew** that Plaintiff did not "flash" a badge but that Defendant Gill merely saw Plaintiff's work security badge in the car. Thus, Defendant Craig knew that a statement to the contrary would be false. However, Defendant Craig allowed the prosecution of Plaintiff to initiate and continue despite knowing that Defendant Gill provided false information to seek the arrest warrants. Gill Dep., at 43:25-44:8 45:13-46:1, Ex. 2; Brown Dep., at 121:11-122:15. Defendant Craig even testified against Plaintiff's at the Motion to Suppress Hearing in his criminal case and did not inform the Court that Defendant Gill was untruthful in his testimony and in his

---

[6] Defendants admit that Defendant Gill instituted and continued Plaintiff's prosecution stating that it was "Officer Gill who made the decision to seek the arrest warrant after conducting an investigation following the traffic stop." [Doc. 46, 18].

warrant applications despite being sworn in to tell the truth prior to giving testimony. [Doc. 12].

Furthermore, when a defendant "directly or indirectly urges a law enforcement official to begin criminal proceedings," even if the initiation of the criminal action is not expressly directed by the defendant, the defendant may be held liable for malicious prosecution. *King v. King*, 342 F. Supp. 3d 1364, 1380 (M.D. Ga. 2018) citing *Willis v. Brassell*, 220 Ga. App. 348, 350-51, 469 S.E.2d 733, 737 (1996) (citing *Ginn v. Citizens & S. Nat'l Bank*, 145 Ga. App. 175, 178, 243 S.E.2d 528, 530-31 (1978)). In the instant case, Defendant Craig admits the traffic stop was made at his direction. [Craig Depo, 52:15-19; 60:21-24]. As one can see by the conversation between Defendants Gill and Craig, Defendant Craig not only urged Defendant Gill to pull over Plaintiff with fabricated probable cause but agreed with Defendant Gill to take out warrants on Plaintiff. [Craig Dec., Exh. 1].

## C. Defendants Craig and Gill Continued Prosecution with Malice and Without Arguable Probable Cause.

The malice needed for a malicious prosecution action may be inferred from circumstances such as a "total lack of probable cause," O.C.G.A. § 51–7–44, or actions of a defendant "done with a reckless disregard for or conscious indifference to the rights of the plaintiff." *Lagroon v. Lawson*, 328 Ga.App.614 (2014) citing

*Willis v Brassell,* 220 Ga.App.348, 352 (1996). Taking Plaintiff's version of the facts as true for Summary Judgment purposes, Plaintiff did not state to Defendant Gill that he was a P.O.S.T. certified police officer nor did he "flash" a badge to impersonate the same. [Brown Dep., at 121:11-122:15]. Under those facts, Defendants lacked any probable cause to seek arrest warrants for Plaintiff for the charges at issue.

### 1. Existence of Malice and Probable Cause are Jury Questions.

The Eleventh Circuit has held that "in an action to recover damages for malicious prosecution where…the evidence is in dispute, the existence or non-existence of malice and want of probable cause are questions of fact for the jury." *Kingsland,* 382 F.3d at 1235 (11th Cir. 2004) citing *Good Holding Co. v. Boswell,* 173 F.2d 395, 399 (5th Cir.1949). In Kingsland, as in the instant case, the Plaintiff alleged that the officers fabricated evidence to secure arrest warrants. *Id.* The Court concluded that the facts viewed in the light most favorable to [plaintiff], supported a conclusion that the arrest affidavit included recklessly or deliberately false statements that are material to a finding of arguable probable cause. If the defendants fabricated or unreasonably disregarded certain pieces of **evidence** to establish probable cause or arguable probable cause, as alleged, reasonable officers in the same circumstances and possessing the same knowledge as the defendants could not have believed that probable cause existed to arrest the plaintiff. Because

a jury question exists as to whether the defendants constructed evidence upon which to base Kingsland's arrest, the question whether arguable probable cause for the arrest existed is aptly suited for a jury.

In the instant case, there is no video or audio recording of the initial stop of Plaintiff's vehicle and the conversation held between Plaintiff and Defendant Gill. As such, there is a dispute in the facts between Plaintiff and Defendants regarding what transpired and what was said. Therefore, there is an obvious question of fact that should be submitted to a jury and Summary Judgment is improper.

### D. Defendants Not Entitled to Official Immunity on Plaintiff's Malicious Prosecution Claim under Georgia Law as Defendants Acted with Actual Malice and Intent to Injure.

In the context of official immunity, "[a]ctual malice requires a showing that the actor had a deliberate intention to do wrong, and ... wilful conduct is based on an actual intention to do harm or inflict injury." *Griswold v. Collins,* 318 Ga.App. 556, 558(2)(a), 734 S.E.2d 425 (2012) (factfinder may infer from evidence that a defendant acted with actual malice). *City of Atlanta v. Shavers,* 326 Ga.App. 95, 98(2)(b), 756 S.E.2d 204 (2014).

Defendants argue that they did not act with the requisite malice or intent to injure and cite to *Davis v. Lang*, 706 F. App'x 551 (11th Cir. 2017), in which the Court granted summary judgment to the officer based on official immunity where he did not "intentionally" give false testimony. In this case, Defendant Gill swore

under oath in Plaintiff's arrest warrants and in his police report that Plaintiff "flashed" a badge at him in an attempt to impersonate a police officer. However, the audio traffic between he and Craig at the time of the incident directly contradicts that statement and thus, is evidence that Defendant Gill intentionally lied on the arrest warrants and in his police report. Clearly, audio traffic as the events are transpiring is going to be the most accurate description of what actually happened since it is occurring "real time." As we can see from the transcription, Defendant Gill made it very clear that Plaintiff did not show him a badge, in direct contradiction with his police report and the arrest warrants.

Additionally, as discussed above, because of Defendant Gill's own admission, Defendant Craig **knew** that Plaintiff did not "flash" a badge but that Defendant Gill merely saw Plaintiff's work security badge in the car. Thus, Defendant Craig knew that a statement to the contrary would be false. However, Defendant Craig did not inform the Court that Defendant Gill was untruthful in his testimony and in his warrant applications despite being sworn in to tell the truth prior to giving testimony. [Doc. 12]. Therefore, Defendants each acted with a "deliberate intention to do wrong" by lying under oath.

## II. Defendants not Entitled to Qualified Immunity as to Intentional Infliction of Emotional Distress as Plaintiff Established the Elements of the Claim.

**A. Defendants Conduct was Extreme and Outrageous.**

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. *Jones v. Warner*, 301 Ga. App. 39, 42, 686 S.E.2d 835, 839 (2009). A case of intentional infliction of emotional distress is one where, generally speaking, "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Turnage v. Kasper*, 307 Ga. App. 172, 182, 704 S.E.2d 842, 852 (2010).

In *Turnage*, Defendant instigated a false arrest against Plaintiff knowing that she had not committed the crime for which she was eventually charged. The Court concluded that such conduct could be considered by a jury to be extreme and outrageous conduct. *Id* at 183.[7]  In this case, the conduct is even more egregious because we have police officers who took oaths of office to uphold the law, fabricating evidence and lying under oath. Such conduct undoubtedly rises to the level of extreme and outrageous required to pursue a claim for Intentional Infliction of Emotional Distress.

---

[7] See also, *Wal–Mart Stores v. Johnson,* 249 Ga.App. 84, 87 (2001) (holding that defendant's insistence that plaintiff be arrested and prosecuted despite having evidence that she did not commit a crime was sufficient to support a claim), overruled on other grounds, *Ferrell v. Mikula,* 295 Ga.App. 326 (2008); *K–Mart Corp. v. Lovett,* 241 Ga.App. 26, 29 (1999).

**B. Plaintiff Suffered Severe Emotional Distress as a Result of Defendants' Conduct.**

In *Turnage*, as in this case, as Plaintiff was being arrested, members of her neighborhood gathered outside of home to watch. The Court held that this public humiliation was, in and of itself, sufficient to constitute intentional infliction of emotional distress. *Id*. at 183. The Court also added that the fact that the Plaintiff was booked into the general jail population, where she spent two weeks incarcerated and away from her husband and two children, would "naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." *Id*.

Similarly to the Plaintiff in *Turnage*, Plaintiff Brown suffered the embarrassment of having his house searched in front of his neighbors with some even recording video footage with their cell phone. [Brown Depo., 132:4-5]. His wife was also informed that he was being arrested for prostitution which was not accurate. [Brown Depo. 131:11-14]. Plaintiff was force to be booked into the DeKalb County Jail and serve from June 10, 2015 to June 14, 2015, prior to being released. [Brown Depo., 139:1-5]. Additionally, he underwent the extreme stress of having criminal charges pending for over **ten (10) months** knowing that he was not guilty of the charges against him [Brown Depo., 147:14-23].

Evidence of police officers fabricating evidence to secure arrest warrants against an innocent civilian that they took an oath to protect clearly rises to the level of outrageousness to support a claim for Intentional Infliction of Emotional Distress. Additionally, the embarrassment, stress and humiliation described by Plaintiff is evidence of severe emotional distress. Accordingly, Defendants are not entitled to Summary Judgment, as Plaintiff has established the requisite elements for the claim.

### 1. Defendants are Not entitled to Official Immunity as Defendants Acted with Actual Malice and Intent to Injure.

As discussed in Section I.D above, the evidence shows that Defendants each acted with a "deliberate intention to do wrong" and should not be shielded by official immunity.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, and accepting Plaintiff's version of the disputed facts as true, Summary Judgment should be denied.[8]

---

[8] In Kingsland, the 11th Circuit reversed the trial court after summary judgment was granted, noting that "the plaintiff has proffered no less evidence regarding the presence or absence of a cannabis odor than the defendants have. The plaintiff's word is merely countered by the defendants' testimony. Given the standard of review at the summary judgment stage, we must accept Kingsland's version of the facts as true. *See Rowe v. City of Fort Lauderdale,* 279 F.3d 1271, 1279 (11th Cir.2002) (stating that a court must accept the non-movant's version of disputed facts as true for purposes of summary judgment). *Kingsland,* 382 F.3d at 1227.

Respectfully submitted this 6th day of February, 2019.

/s/ Dwight L. Thomas
Dwight L. Thomas
Attorney for Plaintiff
Georgia Bar No. 704825

/s/ Hannah R. Moore
Hannah R. Moore
Attorney for Plaintiff
Georgia Bar No. 581504

2296 Henderson Mill Road NE
Atlanta, GA 30349
Telephone: 404-522-1400
Facsimile:  404-755-2327

## **<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>**

The undersigned hereby certifies that the foregoing document was prepared in accordance with the requirements of Local Rule 5.1 of the Northern District of Georgia and that a 14 pt Times New Roman font was used.