IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DARNELL BROWN,<br><br>　　　Plaintiff,<br><br>v.<br><br>DEKALB COUNTY, GEORGIA; OFFICER C.R. GILL, individually and in his official capacity as an employee of DeKalb County; and OFFICER D.L. CRAIG, individually and in his official capacity as an employee of DeKalb County,<br><br>　　　Defendants. | Civil Action File No.<br>1:17-CV-01780-WMR |

**ORDER**

This matter is before the Court on Officer C.R. Gill and Officer D.L. Craig's Motion for Summary Judgment [Doc. 46]. Upon consideration of the evidence, argument of counsel, and all appropriate matters of record, the Court finds and rules as follows.

**I.   FACTUAL BACKGROUND**

Defendants Officer C.R. Gill and Officer D.L. Craig were, at all relevant times, police officers with the DeKalb County Police Department. (Doc. 46-2 ¶2; Doc. 58-2 ¶ 2). On June 2, 2015, Officer Craig was conducting undercover

surveillance related to alleged prostitution occurring in Room 115 of the Super 8 Motel in Tucker, Georgia. During this surveillance, Officer Craig observed a vehicle being driven by Plaintiff enter into the Super 8 Motel parking lot and park in front of Room 115. (Doc. 46-2 ¶¶ 5-7; Doc. 58-2 ¶¶ 5-6). Officer Craig then observed Plaintiff exit his vehicle and enter into Room 115 for approximately 20-25 minutes before exiting the room and returning to his vehicle. Officer Craig then observed Plaintiff drive his vehicle out of the Super 8 Motel parking lot by turning right onto Crescent Centre Boulevard. (Doc. 46-2 ¶¶ 8, 18; Doc. 58-2 ¶¶ 8, 18).

At the time Plaintiff exited the Super 8 Motel parking lot, Officer Craig was in radio communication with Officer Gill, who was in his patrol car nearby. (Doc. 46-2 ¶ 10; Doc. 58-2 ¶ 10). Upon observing Plaintiff leaving the premises, Officer Craig advised over radio that Plaintiff had made a right turn out of the Super 8 Motel parking lot without using his turn signal.[1] (Doc. 46-2 ¶ 21; Doc. 58-2 ¶ 21). Relying on Officer Craig's information that Plaintiff failed to use his turn signal when making the turn, Defendant Gill proceeded to conduct a traffic stop of Plaintiff's vehicle. (Doc. 46-2 ¶¶ 22-23; Doc. 58-2 ¶¶ 22-23).

---

[1] While Plaintiff does not dispute that Officer Craig told Officer Gill that he had not used his turn signal, he does dispute having not used his turn signal. (Doc. 58-2 ¶ 21).

After stopping Plaintiff's vehicle, Officer Gill exited his patrol car and walked to the driver's side door of Plaintiff's vehicle. (Doc. 48, Gill Depo. at pp. 31:11-32:4). At the time of the stop, Plaintiff (who worked as a security guard) was wearing black or blue military-type apparel with a plain black shirt and had various security officer or law enforcement paraphernalia in his vehicle. (Doc. 47, Brown Depo. at pp. 23:11-24:15, 30:14-31:3, 59:11-60:19, 89:22-91:23). On the back seat of his vehicle was a blue or black shirt emblazoned with the words "Special Officer GA" or "Special Security Officer" in large font. (Doc. 48, Gill Depo. Ex. 3; Doc. 47, Brown Depo. Ex. 8 and 9). On the floor of the back seat was a duty belt and holster with a firearm, pepper spray, a baton, handcuffs, flashlight, and a radio covered by a blue or black jacket also emblazoned with the words "Special Officer GA" or "Special Security Officer" and bearing a gold metal badge that said "Loss Prevention Officer." (Doc. 47, Brown Depo., at pp. 25:12-23, 30:10-31:3, 59:11-60:19, 89:22-91:23, 91:18-92:9, 93:1-14, 94:1-95:23, 119:4-15, 121:9-122:3).

Upon seeing the shirt and badge, Officer Gill asked Plaintiff whether he was in law enforcement. (Doc. 47, Brown Depo., at p. 108:9-22; Doc. 48, Gill Depo. at pp. 43:25-46:1). Plaintiff denies stating that he currently was in law enforcement or a P.O.S.T-certified officer. Instead, he asserts that he told Officer Gill that he was

in the security business and that he used to work for the Fulton County Sheriff's Department. (Doc. 47, Brown Depo. at pp. 108:9-109:1).

When Officer Gill returned to his patrol car to run Plaintiff's driver's license, he contacted Officer Craig using his police radio. (Doc. 46-2, at pp. 8-9 ¶ 34). The audio recording of the police radio traffic shows that Officer Gill and Officer Craig had the following discussion concerning whether Plaintiff was holding himself out to be a law enforcement officer:

> (18:14-18:17) **Officer Gill**: Hey Craig, you won't even believe this.
>
> (18:19-18:21) **Officer Craig**: Don't tell me he admitted to it.
>
> (18:22-18:26) **Officer Gill**: No, but uh he's a retired PD.
>
> (18:32-18:38) **Officer Craig**: Are you serious? I mean I saw the little sticker on the back, but oh my goodness
>
> (18:40-18:47) **Officer Gill**: Yeah. He's playing the whole act too, like aw yeah man, I'm just trying to help her on her feet and stuff.
>
> (18:53-18:55) **Officer Craig**: Did he show you his badge?
>
> (18:56-19:05) **Officer Gill**: Uh he didn't show it but I saw it. I was like, "you work for PD?" "Yeah, I'm retired." It was like, "Oh yeah?"

(Doc. 46-8, Craig Declaration, Ex. 1 at p. 5).[2]

---

[2] The time within the parentheses indicates the time on the audio recording in which the dialogue appears. (Id. at p. 1, fn.1).

After running Plaintiff's driver's license, which showed the license to be valid, Officer Gill returned to Plaintiff's vehicle and released Plaintiff with a verbal warning in lieu of a traffic citation. (Doc. 46-2, at p. 9 ¶¶ 35-36; Doc. 58-2, at p. 4 ¶¶35-36).

The next day, Officer Gill contacted the Fulton County Sheriff's Office and spoke with two representatives there, who stated that they had no knowledge or record of Plaintiff having been employed there. (Doc. 48, Gill Depo. at pp. 22:21-23:10 and Ex. 1).  Officer Gill also ran Plaintiff's criminal history, which showed that Plaintiff had a previous arrest for impersonating a law enforcement officer. (*Id.*); see also Doc. 54, Brown Depo. at pp. 54:19-55:23).  Based on the evidence he collected, Officer Gill went to the Magistrate Court of DeKalb County and obtained warrants against Plaintiff for impersonating an officer under O.C.G.A. § 16-10-23, obstruction under O.C.G.A. § 16-10-24(a), and loitering/prowling under O.C.G.A. § 16-11-36(a). (Doc. 48, Gill Depo. at pp. 56:20-57:9 and Ex. 2).  Notably, in the affidavit offered in support of the warrant for impersonating a law enforcement officer, Officer Gill swore under oath that Plaintiff falsely held himself out as a police officer "by flashing his badge" during the traffic stop. (Doc. 48 Ex. 2).  There is no evidence to show that Officer Craig participated or had any part in the decision to seek or secure the warrants against Plaintiff.

Upon learning of the warrants, Plaintiff turned himself into the DeKalb County Sheriff's Office, was booked in the DeKalb County Jail, and spent several days in jail before being released on bond. (Doc. 46-2 ¶¶ 41, 43; Doc. 58-2 ¶¶ 41, 43). In the criminal case arising from the arrest, Plaintiff successfully moved to suppress the evidence collected by Defendant Gill during the traffic stop based on the DeKalb County Superior Court's determination that the traffic stop was unconstitutional. (Doc. 46-2 ¶¶ 44, 46, 48; Doc. 58-2 ¶¶ 44, 46, 48). The charges against Plaintiff then were dismissed by *nolle prosequi* order. (Doc. 46-2 ¶48; Doc. 58-2 ¶ 48; Doc. 1-2).

## II.   PROCEDURAL HISTORY

Plaintiff filed this lawsuit on May 16, 2017 against Officer Craig, Officer Gill, and DeKalb County, Georgia. [Doc. 1]. Plaintiff asserted claims for false arrest and malicious prosecution under 42 U.S.C. § 1983 and for malicious prosecution, false imprisonment, and intentional infliction of emotional distress under Georgia law. [*Id.*].

On June 15, 2017, Defendants moved to dismiss some of the claims against them. [Doc. 7]. The Court granted in part and denied in part the motion to dismiss. Specifically, Plaintiff's claims for false arrest and false imprisonment were dismissed, but the portion of the motion to dismiss pertaining to Plaintiff's remaining

claims for malicious prosecution and intentional infliction of emotional distress was denied. [Doc. 17]. Officer Craig and Officer Gill have moved for summary judgment as to the remaining claims based primarily on qualified and official immunity. [Doc. 46].

## III. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the moving party bears the initial burden of showing that there "is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After the moving party has carried its burden, the non-moving party must present competent evidence that there is a genuine issue for trial. *Id.* at 324.

The Court must view all evidence and factual inferences in a light most favorable to the non-moving party. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1998)). But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

### B.  Plaintiff's Claims for Malicious Prosecution

#### 1.  Plaintiff's Federal Malicious Prosecution Claim

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (citation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (citation omitted).

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Wood*, 323 F.3d at 877. Here, there is no dispute that Officer Gill and Officer Craig were acting within the scope of their discretionary authority as DeKalb County police officers at all relevant times. As a result, the burden shifts to Plaintiff to show that qualified immunity is not appropriate by

demonstrating that Officer Gill and Officer Craig violated his clearly established constitutional rights.  *Wood*, 323 F.3d at 877.

To establish a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must prove a violation of his Fourth Amendment rights to be free from unreasonable seizures in addition to the elements of the common-law tort of malicious prosecution; the elements of the common law tort of malicious prosecution includes: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  *Wood*, 323 F.3d at 881 (citing *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998)).

Georgia law is instructive in determining whether a plaintiff has satisfied the elements of a § 1983 malicious prosecution claim in Georgia.  *E.g.*, *Wood*, 323 F.3d at 881-882.  Under Georgia law, the "central question" in determining whether a defendant has "instituted or continued" a criminal prosecution "is whether the officials involved made an 'independent decision to arrest or prosecute.'"  *Jackson v. K-Mart Corp.*, 851 F. Supp. 469, 472 (M.D. Ga. 1994) (citation omitted).  In Georgia,

> [t]he law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute.  In the

> former case there is potential liability for . . . malicious prosecution; in
> the latter case there is not.

*Everett v. Cobb County, Ga.*, No. 1:17-CV-3392-TWT, 2018 WL 2219435, at *2 (N.D. Ga. May 15, 2018) (citation omitted). "A police officer is not the legal cause of a malicious prosecution when he is not 'responsible for the decision to prosecute, and . . . [did not] improperly influence[] the decision to prosecute." *Deegan v. Homestead Police Dep't*, 750 F. App'x 796, 798 (11th Cir. 2018); *accord Warren v. Scott*, No. 1:12-CV-4299-ODE, 2014 WL 11858173, at *9-*10 (N.D. Ga. May 23, 2014) (granting summary judgment to officers where they were not involved with decision to charge and did not participate in the completion of arrest warrants).

(a) <u>Officer Craig</u>

In this case, the undisputed material evidence shows that Officer Craig played no role in the decision to prosecute Plaintiff. Indeed, Officer Craig's only involvement in the criminal case occurred when he was compelled to testify at the hearing on Plaintiff's motion to suppress regarding the basis for the traffic stop itself. Although Officer Craig did advise Officer Gill that Plaintiff had failed to use a turn signal, which led to the traffic stop, Plaintiff was not arrested or prosecuted for the alleged traffic offense. Rather, it was Officer Gill who made the decision to seek the warrants against Plaintiff. As Officer Craig did not institute or continue the criminal prosecution against Plaintiff, there can be no finding of malicious conduct

on the part of Officer Craig for purposes of Plaintiff's § 1983 malicious prosecution claim. Therefore, qualified immunity bars Plaintiff's § 1983 claim against Defendant Craig.

(b) Officer Gill

A government agent is not entitled to qualified immunity for his conduct if his discretionary act is "so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).

In the Complaint, Plaintiff alleges, inter alia, that Officer Gill knowingly violated his Fourth Amendment rights by fabricating evidence and making willful misrepresentations in order to secure the warrants which led to his prosecution. (Doc. 1 at ¶ 37). Construing the evidence in the light most favorable to Plaintiff, as the nonmovant, the evidence shows that there is a genuine issue of material fact as to whether Officer Gill made a willful misrepresentation in obtaining the warrants. Specifically, at the time of the traffic stop, the evidence shows that Officer Gill informed Officer Craig that Plaintiff had not shown a badge to him and that he merely noticed the badge, apparently in plain sight. (Doc. 46-2, at pp. 8-9 ¶ 34; Doc. 46-8, Craig Declaration, Ex. 1 at p. 5). However, in his affidavit in support of the

arrest warrant, Officer Gill swore under oath that Plaintiff falsely held himself out as a police officer "by flashing his badge" during the traffic stop. (Doc. 48 Ex. 2). If Officer Gill gave information which he knew to be false and unduly influenced the magistrate judge into issuing the warrants, Officer Gill may be held liable for malicious prosecution. See *Jackson*, 851 F. Supp. at 472. Furthermore, if Officer Gill's statement in his sworn affidavit was untrue, as the other evidence suggests, it would be clear to Officer Gill at the time he obtained the warrant that his conduct was unlawful. Accordingly, Officer Gill is not entitled to qualified immunity for his role in obtaining the warrants which led to Plaintiff's prosecution, and a genuine issue of material fact remains as Plaintiff's § 1983 malicious prosecution claim against Officer Gill.

### 2. Plaintiff's State Law Malicious Prosecution Claim

The elements of the common-law tort of malicious prosecution for § 1983 purposes are the same as those for malicious prosecution under Georgia law. *See Kelly v. Curtis*, 21 F.3d 1544, 1556 (11th Cir. 1994) (citing *Commercial Plastics & Supply Corp. v. Molen*, 182 Ga. App. 202, 203 (1987)); *also Standard v. Falstad*, 334 Ga. App. 444, 446 (2015). Under Georgia law, however, county law enforcement officers are entitled to official immunity from suit and liability for the performance of their official functions unless they act with "actual malice or an

intent to injure when performing a discretionary act." *Roper v. Greenway*, 294 Ga. 112, 113 (2013) (citation omitted). "'Actual malice' . . . denotes 'express malice,' i.e. 'a deliberate intention to do wrong,' and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 203 (2007) (citation omitted). "The phrase 'actual intent to cause injury' has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Selvy v. Morrison*, 292 Ga. App. 702, 705 (2008) (citation omitted). In other words, it contains "aspects of malice, perhaps wicked or evil motive." *Id.*

    (a) <u>Officer Craig</u>

As set forth above, Officer Craig did not participate or play any part in the decision to initiate the prosecution of Plaintiff for impersonating a law enforcement officer. Accordingly, there can be no finding of actual malice or intent to injure on the part of Officer Craig for purposes of Plaintiff's malicious prosecution claim. Consequently, official immunity bars Plaintiff's state law malicious prosecution claim against Officer Craig.

(b) <u>Officer Gill</u>

As there is evidence to suggest that Officer Gill made a willful misrepresentation in his affidavit to obtain the warrants, Officer Gill is not entitled to official immunity for his role in obtaining the warrants which led to Plaintiff's prosecution, and a genuine issue of material fact remains as Plaintiff's state law malicious prosecution claim against Officer Gill.

### C. Plaintiff's Claim for Intentional Infliction of Emotional Distress

To maintain his claim for intentional infliction of emotional distress claim, Plaintiff must show that "(1) defendants' conduct was intentional or reckless; (2) defendants' conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe." *Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 855-856 (2009) (citation omitted).

(a) <u>Officer Craig</u>

Plaintiff's claim for intentional infliction of emotional distress arises out of his arrest and prosecution. As set forth above, Officer Craig did not participate or play any part in the decision to arrest and prosecute Plaintiff. Accordingly, there can be no finding Officer Craig's conduct was intentional, reckless, extreme, or

outrageous.  Consequently, Plaintiff lacks evidence to satisfy essential elements of his intentional infliction of emotional distress claim against Officer Craig.

(b) Officer Gill

In this case, Plaintiff has presented evidence to show that Officer Gill made an intentional misrepresentation to secure the warrants, that Plaintiff suffered the embarrassment of having his house searched in front of his neighbors with some even recording video footage with their cell phone (Doc. 47, Brown Depo. at p. 132:4-5), that Plaintiff was arrested and spent several days in jail before being released (Doc. 47, Brown Depo. at p. 139:1-5), and that Plaintiff had to endure the extreme stress of having criminal charges pending against him for months until the evidence was suppressed and the nolle prosequi order was entered. (Doc. 47, Brown Depo. at p. 147:14-23; see also Doc. 1-1).  As Officer Gill is not entitled to official immunity for his conduct, and because Plaintiff has presented evidence to satisfy all of the elements of his intentional infliction of emotional distress claim against Officer Gill, summary judgment as to Officer Gill is not warranted.

**IV.   CONCLUSION**

For the above reasons, the Motion for Summary Judgment [Doc. 46] is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the Court GRANTS the motion for summary judgment as to the claims against Defendant Officer D.L.

Craig, and the claims against him are hereby DISMISSED WITH PREJUDICE. The Court DENIES the motion for summary as to the claims against Defendant Officer C.R. Gill, and the claims against him shall proceed to trial.

**IT IS SO ORDERED** this 18th day of April, 2019.

_____
WILLIAM M. RAY, II
United States District Judge
Northern District of Georgia